UNITED STATES, Appellee,

v.

Specialist Jason S. DUNCAN, United States Army, Appellant.

ARMY 20020092.

U.S. Army Court of Criminal Appeals.

9 March 2005.

For Appellant: Colonel Robert D. Teetsel, JA; Lieutenant Colonel E. Allen Chandler, Jr., JA; Major Imogene M. Jamison, JA; Captain Terri J. Erisman, JA (on brief).

For Appellee: Colonel Lauren B. Leeker, JA; Lieutenant Colonel Margaret B. Baines, JA; Lieutenant Colonel Randy V. Cargill, JA, USAR (on brief).

Before MERCK, Senior Judge, JOHNSON, and MOORE, Appellate Military Judges.

OPINION OF THE COURT

JOHNSON, Judge:

A military judge sitting as special court-martial convicted appellant, consistent with his pleas, of failing to go to his appointed place of duty, making a false official statement, larceny, wrongful appropriation (three specifications), and housebreaking, in violation of Articles 86, 107, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 907, 921, and 930 [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for four months, forfeiture of $700.00 pay per month for four months, and reduction to Private E1. The case is before this court for review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

We have considered the record of trial, appellant's assignments of error, and the government's response thereto. We find no

basis for relief; however, the first assignment of error warrants comment. Appellant asserts that his guilty plea to failing to go to his appointed place of duty was improvident because he had authority to miss the formation, albeit authority obtained by making a false statement. We disagree.

## FACTS

Appellant's company had accountability formation every weekday morning. On 5 September 2001, appellant missed this formation. Appellant told the military judge during the providence inquiry that he "had permission to be away from the formation, but it was based on a false statement[.]" Appellant explained that he told his squad leader he had to take his infant son to the hospital, and based on that false information, appellant's squad leader gave him permission to miss the formation. In reality, however, appellant lied in order to avoid getting into trouble for not having the equipment required for that morning's formation.

## LAW

■ "We review a military judge's acceptance of a guilty plea for an abuse of discretion." *United States v. Le*, 59 M.J. 859, 862 (Army Ct.Crim.App.2004) (citing *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)). A military judge's acceptance of a guilty plea will be overturned only if the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002) (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)). Rule for Courts–Martial 910(e) requires that the military judge conduct a providence inquiry which satisfies her that there is a factual basis for the guilty plea prior to its acceptance. "In order to establish an adequate factual predicate for a guilty plea, the military judge must elicit 'factual circumstances as revealed by the accused himself [that] objectively support that

plea[.]'" *Jordan*, 57 M.J. at 238 (quoting *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980)); *see also United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F.1996); *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A.1994).

■ If an accused sets up a matter inconsistent with his plea, the military judge must either resolve the inconsistency or reject the guilty plea. *United States v. Sanchez*, 54 M.J. 874, 877 (Army Ct.Crim.App. 2001) (citing *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F.1996); *Davenport*, 9 M.J. at 367; UCMJ art. 45(a), 10 U.S.C. § 845). Furthermore, when such inconsistent matters "reasonably raise[ ] the question of a defense ... it [is] incumbent upon the military judge to make a more searching inquiry to determine the accused's position on the apparent inconsistency with his plea of guilty." *United States v. Timmins*, 21 U.S.C.M.A. 475, 479, 45 C.M.R. 249, 253, 1972 WL 14168 (1972). Military judges are required to resolve possible defenses that are raised during the plea inquiry and shall not accept the plea unless the accused admits facts that negate the defense. *See* UCMJ art. 45(a); *United States v. Perron*, 58 M.J. 78, 81–2 (C.A.A.F.2003); *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F.1996).

## DISCUSSION

■ The elements for failing to go to an appointed place of duty are: "(a) [t]hat a certain authority appointed a certain time and place of duty for the accused; (b) [t]hat the accused knew of that time and place; and (c) [t]hat the accused, without authority, failed to go to the appointed place of duty at the time prescribed." *Manual for Courts–Martial, United States* (2002 ed.) [hereinafter *MCM*], Part IV, para. 10b(1).[1] Accordingly, if appellant had proper authority to miss the accountability formation, there would be no violation of Article 86, UCMJ.[2]

---

1. This same language was in effect at the time of appellant's court-martial.

2. The 1951 Manual for Courts–Martial listed the elements for failure to go to one's appointed place of duty as: "(a) [t]hat a certain authority appointed a certain time and place for a certain duty by the accused, as alleged; and (b) that,

without *proper* authority, the accused failed to go to the appointed place of duty at the time prescribed, or, having so reported, went from that place." *MCM*, 1951, para. 165 (emphasis added). The word "proper" was subsequently dropped from the text of the statute, apparently, as mere surplusage. *See* 10 U.S.C. § 886,

Appellant contends that the focus of Article 86, UCMJ, is on whether authorization exists, not how the authorization is obtained. Citing *United States v. Hale,* 20 U.S.C.M.A. 150, 157, 42 C.M.R. 342, 349, 1970 WL 7098 (1970), appellant argues that authorization to miss a formation, even if falsely obtained, provides the necessary approval and thus, appellant can only be convicted of making a false statement. We must determine whether appellant's authorization acquired through a false statement established a matter inconsistent with his plea.

Appellant's reliance on *Hale* is misplaced. In *Hale,* the accused did not obtain authorization to be absent through fraud. In *Hale,* the accused departed Fort Hood, Texas, for a thirty-day leave. 20 U.S.C.M.A. at 152, 42 C.M.R. at 344. After completing his leave, Second Lieutenant (2LT) Hale had orders assigning him to Vietnam but had not received a port call order. *Id.* His command informed him that he would receive his port call orders at his home address, where he stayed for over thirteen months awaiting orders. *Id.* He then returned to Fort Hood and informed personnel at the Office of the Staff Judge Advocate that he never received his port call orders. *Id.* Subsequently, 2LT Hale was charged with conduct unbecoming an officer for dishonorably failing to return to military control after his leave expired. *Id.* at 157, 42 C.M.R. at 349. The court noted the fact that 2LT Hale "remained at his home of record [and] the Army knew where he was at all times." *Id.* at 157, 42 C.M.R. at 349. Moreover, the *Hale* court reasoned that "military control is not lost, [if a service member] is where he is authorized to be and remains amenable to military orders." *Id.* at 157, 42 C.M.R. at 349 (citing *United States v. Bruhn,* 4 C.M.R. 407, 1952 WL 2786 (A.B.R.1952)). Here, however, appellant's command did not know where appellant was at all times. Appellant was not at the formation nor was he at the hospital with his child. Military control over appellant was indeed lost.

Likewise, *Bruhn* does not provide support for appellant's argument. In *Bruhn,* the accused, a colonel, was charged with: (1) absence without authority from Moji Port, Japan, from on or about 13 February 1952 to on or about 18 February 1952; and (2) causing to be published, with intent to deceive, an order falsely stating that temporary duty was authorized "in connection with Port Authorities," which statement the accused knew to be false. 4 C.M.R. at 408. The accused, as Commander of Moji Port, Japan, had his adjutant prepare temporary duty travel orders for travel to Kobe Port, Japan, effective 14 February 1952 for a period of five days "for the purpose of port activities." *Id.* at 408–09. The accused had the authority to issue such orders. *Id.* at 408. Although the accused attended an official meeting with the Commander of Kobe Port on 14 February 1952, no one had any further contact with the accused after 1630 hours on 14 February 1952 until his return to the unit on 18 February 1952. *Id.* at 409. Based on these facts, the court convicted the accused of unauthorized absence from 15–18 February 1952 and acquitted him of causing to be published, with intent to deceive, the temporary travel orders. *Id.* at 408.

In setting aside the unauthorized absence conviction, the court stated that based upon the facts, the accused was absent *with* authority from Moji Port, Japan. *Id.* at 410. In reaching this conclusion, the court noted that lawful orders placed the accused on temporary travel. *Id.* The court further noted that the evidence did not show that the orders were "spurious" or unauthorized. *Id.* In fact, "[t]he evidence is entirely to the contrary and this conclusion is supported by the fact that the court found the accused not

---

*amended by* 10 U.S.C. § 886, ch. 1041, § 1, 70A Stat. 67 (1956). The Military Judges' Benchbook, however, continues to include the word "proper" in describing the "without authority" element to the offense of failure to go to one's appointed place of duty. *See* Dep't of Army, Pam. 27–9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3–10–1 (1 April 2001). Accordingly, "authority" still retains its meaning of "proper authority," and proper authority does not include authority obtained through a false statement. During the providence inquiry in this case, the military judge followed the Benchbook and included the word "proper" while describing the "without authority" element of the offense of failure to go to one's appointed place of duty.

guilty of causing the order to be published with intent to deceive." *Id.* Thus, if the court-martial had convicted the accused of causing the orders to be published with the intent to deceive, the authorization would have been obtained fraudulently and the absence would have been unauthorized.

In determining whether authorization obtained by fraud can be a defense to failure to go to one's appointed place of duty, we decline to draw a distinction between the concepts of obtaining consent by fraud in the inducement and fraud in the factum. A legal distinction between these two concepts is found primarily in rape cases where consent procured from fraud in the inducement is valid, while consent procured from fraud in the factum is not valid.[3] However, no such distinction is drawn between fraud in the inducement and fraud in the factum under Article 83, UCMJ, 10 U.S.C. § 883, fraudulent separation or enlistment, a military offense that bears a greater similarity to Article 86 than Article 120. Under Article 83, UCMJ, a separation or enlistment is fraudulent if obtained through a *knowingly* false representation or a deliberate concealment. Similarly, we find no reason to determine whether appellant's authorization was obtained through fraud in the inducement or fraud in the factum. Appellant obtained the authority to miss the formation through a knowingly false representation.

For an Article 86, UCMJ, offense, authority obtained through fraud goes against the plain meaning of "without proper authority." *See supra* note 2. As Judge Cook surmised, a fraud that allows one to absent himself from his unit, impairs that unit's ability to perform its primary function and "diminish[es] the unit's readiness and capability to perform its mission." *Wickham v. Hall,* 12 M.J. 145, 151 (C.M.A.1981). Such conduct is, and has always been, punishable. An absence from a unit, organization, or place of duty is "without authority" if it is preceded by the use of false statements, false documents, or false

---

3. Fraud in the inducement "applies to situations where consent is obtained by misrepresentations" about collateral matters, while fraud in the factum "applies to misrepresentations about the nature of the act itself." *United States v. Hughes,* 48 M.J. 214, 216 (C.A.A.F.1998); *see*

information provided by or on behalf of an accused. Appellant's plea was therefore provident.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge MERCK and Judge MOORE concur.

*Outhier,* 45 M.J. at 330; *United States v. Booker,* 25 M.J. 114, 116 (C.M.A.1987); *MCM,* 2002, Part IV, para. 45c(1)(b) ("If there is actual consent, although obtained by fraud, the act is not rape[.]").