BAKER, Judge
(dissenting):
I dissent for two reasons. First, consistent with my views in United States v. Jones, 68 M.J. 465, 475 (C.A.A.F.2010) (Baker, J., dissenting), negligent homicide is a lesser included offense (LIO) of murder. Second, although I agree with the majority that a person may not be convicted of a crime for which he has not been charged, the majority fails to explain why it is appropriate to test for prejudice in light of Rule for Courts-Martial (R.C.M.) 201. R.C.M. 201(b)(3) plainly states that unless an offense is properly referred to a court-martial the court-martial is without jurisdiction to try that offense. If the majority is correct that negligent homicide is not a lesser included offense of murder, then the court-martial at which Appellant was convicted was without jurisdiction to try this offense and there is no need to test for prejudice.
I.
As stated, I adhere to the views expressed in my separate opinion in Jones. The history and purpose of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), offenses indicate that the majority’s adoption of a strict “elements test” from Schmuck v. United States, 489 U.S. 705, 716, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), is inapt in the context of military justice and Article 134, UCMJ. Parker v. Levy, 417 U.S. 733, 743-45, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), illustrates that the Supreme Court recognizes that case law addressed to civilian society may not apply in the same manner in military practice. Recall that it was twenty years after Schmuck that this Court in Jones decided otherwise. Indeed, there can be no clearer method for determining that an offense is a lesser included offense of a greater offense than to state so in the Manual for Courts-Martial.[1] Neither does the new strict elements test provide the intended clarity of notice, as evidenced by litigation in this Court since Jones was decided. See, e.g., United States v. Girouard, 70 M.J. 5 (C.A.A.F.2011); United States v. McMurrin, 70 M.J. 15 (C.A.A.F.2011); United States v. Bonner, 70 M.J. 1 (C.A.A.F.2011); United States v. Alston, 69 M.J. 214 (C.A.A.F.2010). Consistent with this Court’s prior precedent as well as Levy, as the majority notes, the President has listed negligent homicide as a lesser included offense of murder. Girouard, 70 M.J. at 10-11. He has, in fact, done so for all homicide offenses in the MCM since 1951. See, e.g., MCM paras. 197., 198. (1951 ed.) (discussing murder under Article 118, UCMJ, and manslaughter under Article 119, UCMJ); MCM paras. 197., 198. (1969 ed.) (same); MCM paras. 43.d., 44.d. (1984 ed.) (same). And, he has also done so pursuant to the Take Care Clause, his authority as chief executive, and *13 most importantly as commander in chief. See U.S. Const, art. II, §§ 1-3. Indeed, this case highlights how the application of Jones undermines the commander in chiefs authority and ability to flexibly provide for the good order and discipline of the armed forces, in this ease in the context of actions taken in combat.
Therefore, based on my separate analysis in Jones, I would affirm the conviction of negligent homicide.
II.
I also disagree with the majority’s approach of testing for prejudice in this case. R.C.M. 201(b)(3) states: “[F]or a court-martial to have jurisdiction ... [ejach charge before the court-martial must be referred to it by [a] competent authority.” See also United States v. Adams, 66 M.J. 255, 258 (C.A.A.F.2008) (citing R.C.M. 201(b) and stating “Jurisdiction depends upon a properly convened court, composed of qualified members chosen by a proper convening authority, and with charges “properly referred.” (emphasis added)).
The majority states that, “in the ease at bar, the rights at stake are Appellant’s constitutional rights to notice and to not be convicted of a crime that is not an LIO of the offense with which he was charged,” and concludes that “under the facts of this case, the prejudice [to these rights] is clear — Appellant was convicted of an offense that was not an LIO of the charged offense.” Girouard, 70 M.J. at 10, 11 (emphasis added). If Appellant was convicted of an offense that was not a lesser included offense of the charged offense, then Appellant was also convicted of an offense with which he was not charged. Thus, the majority seems to acknowledge the right to be properly charged, but also seems to ignore the fact that the failure to properly refer charges is jurisdictional error under R.C.M. 201(b)(3). Instead, the majority applies a prejudice analysis, incorrectly suggesting that this error is nonjurisdictional and that there might be a circumstance in which the lack of a referral would not be prejudicial to an accused’s material rights.
A review of the cases involving referral defects identifies certain defects that are nonjurisdictional and others that are jurisdictional. See United States v. Cotton, 535 U.S. 625, 628-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (holding that a change of law after trial resulting in an indictment that lacked an element of a charged offense was nonjurisdic-tional); Adams, 66 M.J. at 259 (holding that the failure to properly draft a convening order was administrative); United States v. Wilkins, 29 M.J. 421, 424-25 (C.M.A.1990) (holding that where the accused pled guilty consistent with the terms of the pretrial agreement with the convening authority, the lack of swearing of the charges by an accuser, consideration by a staff judge advocate, or an Article 32, UCMJ, 10 U.S.C. § 832, investigation, were nonjurisdictional errors); cf. United States v. Henderson, 59 M.J. 350, 353-54 (C.A.A.F.2004) (holding that a special court-martial lacked jurisdiction over capital offenses where the tribunal failed to qualify for an exception under R.C.M. 201(f)(2)(C)(ii)-(iii)). Here, however, there is no referral defect — there is no referral at all. In addition to the plain language of R.C.M. 201(b)(3), it must follow that if there are defects in the referral process that are jurisdictional, then the complete absence of referral must be jurisdictional.
The majority seeks to avoid the jurisdictional issue by suggesting that Appellant failed to object to a major amendment to the charge and specification as required by R.C.M. 603, resulting in a forfeiture of that right subject to plain error review. Girouard, 70 M.J. at 8 n. 4. Presumably, if the error is that Appellant failed to object to a major amendment of the charge that was properly referred, the jurisdictional issue goes away, and a plain error analysis is appropriate. However, there are two reasons that the majority’s approach falls short.
First, an accused cannot retroactively forfeit a right. Forfeiture is “the failure to make a timely assertion of a right.” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). An assertion of a right can only be “timely” if it was made when the right existed. R.C.M. 603(d) pro *14 vides that “[cjhanges or amendments to charges or specifications other than minor changes may not be made over the objection of the accused unless the charge or specification is preferred anew.” Thus, an accused’s right to object only arises when trial counsel attempts to make a major amendment to the charge or specification, and an objection, in order to be “timely,” must be made then. Retroactivity is only appropriate to determine whether there was an error at the time of appeal, and does not permit this Court to operate on the original proceedings as if the new law was in force at that time. The majority seems to acknowledge this much when it correctly held that Appellant could not have waived any error because no error existed given the state of the law at the time of trial. Girouard, 70 M.J. at 9-11.
Second, the concept of retroactive amendment cannot exist in the military system. To do so would amount to this Court’s approval of an amendment that was not authorized by the convening authority. Unlike the civilian system, neither the parties nor the military judge has any authority on their own to amend a charge or specification in a way that alleges a completely different offense without the permission of the convening authority. This is a unique characteristic of the military justice system. “[T]he referral of charges to trial by court-martial require[s] the personal decision of the convening authority, which cannot be delegated.” Wilkins, 29 M.J. at 424 (citation omitted). R.C.M. 601(a) defines referral as “the order of a convening authority that charges against an accused will be tried by a specified court-martial.”
Thus, the majority’s citation to R.C.M. 603 is misplaced. It is true that under R.C.M. 603(d) the parties may choose to agree to a major amendment that changes the offense. However, the trial counsel may not do so without obtaining the convening authority’s permission. Wilkins is controlling on the issue:
Although the order is a jurisdictional prerequisite, the form of the order is not jurisdictional. Therefore, if the convening authority issued an order — however informal, oral or written — that a charge against [the accused] be tried by the same court-martial which ultimately entered the findings of guilty, then jurisdiction existed to enter findings on that charge.
Wilkins, 29 M.J. at 424. Therefore, assuming the convening authority agrees to the proposed amendment, the result is a constructive referral. An accused may certainly waive any attendant requirements such as a formal advice from the staff judge advocate under Article 34, UCMJ, 10 U.S.C. § 834, the swearing of the charges, and even an Article 32, UCMJ, investigation. Id. However, the convening authority’s order of referral is jurisdictional and cannot be waived.[2]
Therefore, application of the Jones decision along with R.C.M. 201(b)(3) should lead to the logical conclusion that the conviction of an offense that has not been referred to the court-martial is jurisdictional error, not subject to a prejudice analysis.

. The version currently in effect is Manual for Courts-Martial, United States (2008 ed.) (MCM).

. As a separate matter, I believe the majority has failed to consider the potential double jeopardy implications of its decision. As noted, it is my view that, given the majority's conclusion, this court-martial had no jurisdiction to return the findings on negligent homicide. Generally, conviction by a tribunal lacking jurisdiction to hear the cause will not bar a subsequent trial by one that is vested with jurisdiction. See Wayne R. LaFave et al., Criminal Procedure § 25, at 1210-11 (5th ed.2009) (discussing United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904); Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975)). Here, however, the majority suggests that this court-martial in fact had jurisdiction to return such findings. Thus, in theory and arguably, Appellant has already been placed in jeopardy on a charge of negligent homicide. Ordinarily, an appeal would waive such a question of double jeopardy; however, here the context is one in which Appellant’s case was automatically referred to the CCA, which declined to apply Jones. As a result, Appellant's only recourse was to appeal to this Court. It is unclear whether, for double jeopardy purposes, that should be viewed as waiver of any double jeopardy claim. R.C.M. 201 would remove, and does, remove any ambiguity on this point; however, the majority’s R.C.M. 603 analysis muddies the question of whether another trial on the affected findings in this case is barred by Article 44, UCMJ, 10 U.S.C. § 844, or by the Fifth Amendment to the Constitution in light of our system of mandatory appeal.