UNITED STATES, Appellant

v.

Justin H. MCMURRIN,
Gas Turbine System Technical Fireman
U.S. Navy, Appellee

No. 11-5001

Crim. App. No. 200900475

United States Court of Appeals for the Armed Forces

Argued January 24, 2011

Decided April 14, 2011

RYAN, J., delivered the opinion of the Court, in which
EFFRON, C.J., and ERDMANN and STUCKY, JJ., joined.  BAKER,
J., filed a separate dissenting opinion.

Counsel

For Appellant:  Colonel Louis J. Puleo, USMC (argued);
Lieutenant Commander Sergio Sarkany, JAGC, USN.

For Appellee:  Captain Michael Berry, USMC (argued);
Captain Paul C. LeBlanc, JAGC, USN (on brief).


Military Judge:  Holiday Hanna

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. McMurrin, No. 11–5001/NA

Judge RYAN delivered the opinion of the Court.

A military judge, sitting alone as a general court-martial, convicted Appellee, on mixed pleas, of conspiracy to possess cocaine, violation of a lawful order, wrongful use of cocaine, obstruction of justice, and negligent homicide.[1]  Articles 81, 92, 112a, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 912a, 934 (2006).  On June 17, 2009, Appellee was sentenced to confinement for sixty-six months, reduction to the pay grade of E-l, forfeiture of all pay and allowances, and a dishonorable discharge.  On August 28, 2009, the convening authority approved the sentence as adjudged and, except for the discharge, ordered it executed.

On September 21, 2010, the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA) set aside the guilty findings to negligent homicide and violation of a lawful order and dismissed the corresponding charges and specifications.  See United States v. McMurrin, 69 M.J. 591, 597 (N-M. Ct. Crim. App. 2010).

On October 21, 2010, the Government certified the following issue:

---

[1] Relevant to the granted issue, Appellee was charged with involuntary manslaughter, in violation of Article 119, UCMJ, not negligent homicide, Article 134, UCMJ.

2

> WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL
> APPEALS ERRED BY SETTING ASIDE APPELLANT'S
> CONVICTION FOR NEGLIGENT HOMICIDE AS AN ERSTWHILE
> LESSER-INCLUDED OFFENSE OF INVOLUNTARY
> MANSLAUGHTER ON THE GROUNDS OF CONSTITUTIONALLY
> INSUFFICIENT NOTICE WITHOUT TESTING FOR PREJUDICE
> PER FOOTNOTE 11 OF UNITED STATES v. JONES.

We conclude that there was plain error in this case and that the NMCCA correctly set aside Appellee's conviction for negligent homicide.

## I.

On 19 July 2008, Appellee and Machinist's Mate Fireman Recruit (MMFR) James C. Stephens left the Naval Station they worked at on leave as liberty buddies. Shortly thereafter, they purchased and consumed cocaine together. In addition to the cocaine, MMFR Stephens purchased and consumed heroin by himself. After ingesting the heroin, MMFR Stephens became incoherent. Appellee, although concerned with MMFR Stephens's health, did not seek medical attention for him. Instead, their drug dealer drove with Appellee and MMFR Stephens to a nearby hotel to attend a gathering of servicemembers. Once they arrived at the hotel, Appellee and the drug dealer carried the incoherent MMFR Stephens from the car and placed him in the grass near the parking lot, with Appellee removing MMFR Stephens's cell phone, bank card, and identification from his pockets. Appellee then entered the hotel where the other sailors

3

were socializing, and consumed alcohol.  Fifteen minutes later, Appellee returned to check on MMFR Stephens.  Though still breathing, MMFR Stephens was unresponsive to Appellee's efforts to wake him.  Appellee then moved MMFR Stephens from out in the open into a more secluded area, and returned to the party.  Appellee later checked on MMFR Stephens one more time before realizing that he was dead.  Appellee returned to the party and later discarded MMFR Stephens's cell phone, bank card, and identification.  Appellee never returned for MMFR Stephens's body.

Based on the foregoing, Appellee was charged with, inter alia, the involuntary manslaughter of MMFR Stephens.  At trial, prior to the conclusion of the Government's case-in-chief, the military judge raised the lesser included offense (LIO) of negligent homicide and discussed it with the parties.  At the time of Appellee's court-martial, negligent homicide was considered to be an LIO of involuntary manslaughter under this Court's precedent and was listed as such by the President under the Manual for Courts-Martial, United States (MCM), and Appellee did not object.  See United States v. Taylor, 44 M.J. 254 (C.A.A.F. 1996); MCM pt. IV, para. 44(d)(2).

Throughout the trial, the defense's theory of the case was that under either involuntary manslaughter or negligent

4

homicide Appellee was not guilty because the Government failed to allege or prove that Appellee owed MMFR Stephens a legal duty.  During closing argument, defense counsel argued that Appellee should be found not guilty of negligent homicide because he was not the proximate cause of MMFR Stephens's death and, "as such . . . that contributory [sic] negligence appropriate for an Article 119, involuntary manslaughter, Article 134, negligent homicide offense, is not present in this case."  The military judge found Appellee not guilty of involuntary manslaughter but convicted him of negligent homicide.

Appellee appealed the military judge's decision to the NMCCA, arguing, inter alia, that Appellee's conviction for negligent homicide as an LIO of involuntary manslaughter violates the requirements of due process and Article 79, UCMJ, 10 U.S.C. § 879 (2006).  McMurrin, 69 M.J. at 592. The NMCCA first held that negligent homicide no longer qualifies as an LIO of involuntary manslaughter based upon this Court's adoption of the strict elements test in United States v. Jones, 68 M.J. 465 (C.A.A.F. 2010).  McMurrin, 69 M.J. at 593.  The NMCCA therefore concluded that the specification failed to satisfy Appellee's constitutional right to notice, and set aside his conviction for negligent homicide.  Id. at 596-97.

II.

This case raises the same issue raised in United States v. Girouard, __ M.J. __ (C.A.A.F. 2011): namely, whether an accused's conviction based upon an erroneous finding of an LIO constitutes plain error. Our answer to this question under the facts of this case is that it was plain error.

The relevant facts in this case are substantially similar to those in Girouard: Appellee was convicted of an LIO that is no longer an LIO after our repudiation of the notion of implied elements in United States v. Miller, 67 M.J. 385 (C.A.A.F. 2009), and our return to the elements test in Jones, 68 M.J. 465. Applying the holdings of those cases retrospectively, it was clear and obvious error to convict Appellant of negligent homicide as an LIO of involuntary manslaughter. See United States v. Harcrow, 66 M.J. 154, 159 (C.A.A.F. 2008) ("[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal -- it is enough that an error be plain at the time of appellate consideration.") (citation and quotation marks omitted).

Appellee was charged with involuntary manslaughter, the elements of which are (1) that a certain person is dead; (2) that this death resulted from an act or omission

of the accused; (3) that the killing was unlawful; and (4) that the act or omission constituted culpable negligence, or occurred while the accused was perpetrating one of numerous listed offenses not at issue here.  MCM pt. IV, para. 44.b(2).  However, Appellant was convicted of negligent homicide, the elements of which are (1) that a certain person is dead; (2) that this death resulted from an act or failure to act of the accused; (3) that the killing was unlawful; (4) that the accused's act or failure to act that caused the death amounted to simple negligence; and (5) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.  MCM pt. IV, para. 85.b.  Just as prejudice to good order and discipline or service discrediting are not subsumed within the elements of premeditated murder, Girouard, __ M.J. at __ (11-12) (citing Jones, 68 M.J. at 471; Miller, 67 M.J. at 388-89), they are also not subsumed within the elements of involuntary manslaughter.  Therefore, just as negligent homicide is not an LIO of premeditated murder, id., it is not an LIO of involuntary manslaughter.  Thus, in light of Miller, Jones, and Girouard, the military judge clearly

7

erred when he found negligent homicide to be an LIO of involuntary manslaughter.

Additionally, we find that Appellee's failure to object forfeited, rather than waived, any error. Girouard, __ M.J. at __ (16-17). We therefore grant relief only if there was plain error, which requires (1) that there be error, (2) that the error be plain or obvious, and (3) that the error materially prejudices a substantial right of the accused.[2] Id. (citing United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998)); see also United States v. Harcrow, 66 M.J. 154, 161 (C.A.A.F. 2008) (Ryan, J., concurring) (noting that applying the plain error rule retroactively requires the Court to pretend (1) that the new rule had existed at the time of trial, (2) that had counsel known about the new rule, he would not have forfeited the objection, and (3) that the military judge, despite the new rule, would not have followed it). Whether there was plain error is a question of law, which we review de novo.

---

[2] There is some disagreement about the application of the fourth prong of United States v. Olano, 507 U.S. 725 (1993) -- whether the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." Puckett v. United States, 129 S. Ct. 1423, 1429 (2009) (quoting Olano, 507 U.S. at 736) (citation and quotation marks omitted); see United States v. Paige, 67 M.J. 442, 453 (C.A.A.F. 2009) (Stucky, J., with whom Ryan, J., joined, dissenting in part and concurring in the result).

As noted above, negligent homicide under Article 134, UCMJ, is not an LIO of involuntary manslaughter under Article 119, UCMJ. Therefore, convicting on negligent homicide as an LIO was error that was clear and obvious. Finally, the rights at issue in this context are substantial, given that, as we explained in Girouard,

> [t]he Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V, and the Sixth Amendment provides that an accused shall "be informed of the nature and cause of the accusation," U.S. Const. amend. VI. Both amendments ensure the right of an accused to receive fair notice of what he is being charged with. See Apprendi v. New Jersey, 530 U.S. 466, 476 (2000); Cole v. Arkansas, 333 U.S. 196, 200 (1948); see also Jones, 68 M.J. at 468. But the Due Process Clause of the Fifth Amendment also does not permit convicting an accused of an offense with which he has not been charged. See United States v. Marshall, 67 M.J. 418, 421 n.3 (C.A.A.F. 2009) (noting the government's dual due process obligations of fair notice and "proof beyond a reasonable doubt of the offense alleged" (emphasis added)). As the Supreme Court explained in Patterson v. New York, "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged." 432 U.S. 197, 210 (1977) (emphasis added); see also United States v. Wilcox, 66 M.J. 442, 448 (C.A.A.F. 2008) ("To satisfy the due process requirements of the Fifth Amendment, the Government must prove beyond a reasonable doubt every element of the charged offense." (emphasis added)). Thus, when "all of the elements [are not] included in the definition of the offense of which the defendant is charged," then the defendant's due process rights have in fact been compromised. See Patterson, 432 U.S. at 210.

9

__ M.J at __ (13-14).  Therefore, convicting Appellee of negligent homicide despite the fact that all of its elements were not contained in the specification violated Appellee's Fifth Amendment right not to be convicted of an offense different than the one appearing on the charge sheet.[3]

For its part, the Government assumes without conceding that treating negligent homicide as an LIO of involuntary manslaughter was plain and obvious error.  It argues, however, that the error did not materially prejudice a substantial right of the accused.  We disagree.

At the outset, we reject Appellee's contention that the error here was structural.  Structural errors are those constitutional errors so "affect[ing] the framework within which the trial proceed[s]," United States v. Wiechmann, 67

---

[3] In Jones, we loosely used the term "variance" in reference to a conviction of an offense that was not an LIO.  68 M.J. at 473.  Since  "variance" is a term of art, that "'exists when evidence at trial establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge,'" United States v. Lubasky, 68 M.J. 260, 264 (C.A.A.F. 2010) (quoting United States v. Teffeau, 58 M.J. 62, 66 (C.A.A.F. 2003)), it would have been better had we used "amendment," which occurs when the prosecution or the court either literally or constructively alters the terms of the charging document.  See Stirone v. United States, 361 U.S. 212, 217 (1960).  The problem here is not that the Government's proof did not match the allegations on the charge sheet, but that the charge sheet was constructively amended by convicting Appellee of an offense with elements not contained in the specification.

M.J. 463, 463 (C.A.A.F. 2009) (citation and quotation marks omitted), that the trial "cannot reliably serve its function as a vehicle for determination of guilt or innocence," Rose v. Clark, 478 U.S. 570, 577-78 (1986), overruled on other grounds by Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also Rivera v. Illinois, 129 S. Ct. 1446, 1455 (2009) ("As our recent decisions make clear, we typically designate an error as 'structural' . . . only when 'the error necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'") (citation and quotation marks omitted) (alteration in original); Neder v. United States, 527 U.S. 1, 8 (1999) ("Indeed, we have found error to be 'structural' . . . only in a 'very limited class of cases.'" (quoting Johnson v. United States, 520 U.S. 461, 468 (1997))). Like the Supreme Court, this Court has indulged a "strong presumption" against structural error, and has declined to find it unless the error is of such a nature that its effect is "difficult to assess" or harmlessness is irrelevant. See United States v. Brooks, 66 M.J. 221, 224 (C.A.A.F. 2008); see also Rose, 478 U.S. at 579-80. We cannot say that prejudice is always irrelevant in LIO cases like McMurrin and Girouard, and we cannot say that the effect of such an error is necessarily

11

"difficult to assess." For instance, if Appellee's defense to the charge of involuntary manslaughter were that he instead committed negligent homicide, this fact may be relevant to our analysis of the prejudice prong of the plain error test.

Moreover, we have not previously treated the type of error before the Court as structural. For instance, in Jones, we held:

> [C]onviction of an offense not charged was clearly prejudicial in the context of plain error analysis where, as here, the case was not tried on a theory of indecent acts and the military judge did not introduce the subject of indecent acts into the case until after the parties had completed their presentation of the evidence.

68 M.J. at 473 n.11; see also Girouard, __ M.J. at __ (17) (testing for prejudice based upon an improper LIO instruction).

Rather than assume structural error whenever an accused has been convicted of an offense on the mistaken assumption that it is an LIO of the charged offense, we must determine whether the constitutional error was prejudicial[4] -- and we conclude that in this case, it was. As in Girouard, Appellee was not charged with the offense of which he was convicted, the specification was not

---

[4] We note that it is unclear whether the NMCCA tested for prejudice, but we affirmatively do so here.

amended in accordance with Rule for Courts-Martial 603, nor did he defend himself on the theory that while he was not guilty of involuntary manslaughter, Article 119, UCMJ, he was guilty of negligent homicide, Article 134, UCMJ. But for the error Appellant would not have been convicted of negligent homicide. Such a conviction would have required the military judge to be convinced beyond a reasonable doubt that he was culpably negligent, which the military judge did not find here. Id.

Under the circumstances of this case it was prejudicial plain error to convict Appellee of negligent homicide.

### III.

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

13

United States v. McMurrin, No. 11-5001

    BAKER, Judge (dissenting):

    I adhere to my dissent in United States v. Girouard, __ M.J. __ (C.A.A.F. 2011) (Baker, J., dissenting). First, for the reasons stated in my dissents in Girouard and in United States v. Jones, 68 M.J. 465, 473 (C.A.A.F. 2010) (Baker, J., dissenting), negligent homicide was an LIO of involuntary manslaughter at the time of Appellee's trial and, in my view, it remains so. Second, although I agree that one may not be convicted of an offense for which one has not been charged and that the retroactive application of the Jones decision results in such convictions, in light of Rule for Courts-Martial 201(b)(3), it remains unclear why the majority tests for prejudice if the court-martial in question would have been without jurisdiction over the offense.